UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

JAIME MARTINEZ and
GUADALUPE MARTINEZ,

Debtors.

Case No. 07-26673

Chapter 7

---

MEMORANDUM DECISION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS

---

The matter is before the court on the United States Trustee's motion to dismiss the case pursuant to 11 U.S.C. § 707(b)(1), based on 11 U.S.C. § 707(b)(2) and (b)(3). The debtors opposed the motion and an evidentiary hearing was held in which the debtors provided testimony regarding their income and expenses. A Bankruptcy Analyst from the United States Trustee's office testified regarding the debtors' pay statements, income tax returns, bank statements, bankruptcy schedules and Form 22A. Primarily at issue is whether the debtors are entitled to the additional transportation expense on Line 22 of the Form 22A Statement of Current Monthly Income and Means-Test Calculation for each of their vehicles after the vehicle loan is paid off. Both parties filed briefs supporting their positions and the court took the matter under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

BACKGROUND

The debtors filed their chapter 7 bankruptcy petition on August 26, 2007. The debtors'

obligations are primarily consumer debts, including $148,821 in secured debts and $54,178 in nonpriority unsecured debts. The debtors' annualized current monthly income exceeds the state median family income for a household of five. Nevertheless, according to the debtors' calculations on Form 22A, the presumption of abuse does not arise.

The debtors have three vehicles that are secured by one loan. All of the vehicles are six years old or older. If the debtors continue to pay on the loan as required, they would pay off the loan 35 months after the filing of the petition. For purposes of the means test, both the United States Trustee and the debtors calculated the transportation and ownership deductions for only two vehicles on Lines 22 through 24 of Form 22A.

The debtors claimed both the additional $200 transportation allowance per vehicle on Line 22 and the ownership expenses on Lines 23 and 24. The debtors included this additional $200.00 per vehicle on Line 22 because of the age and/or mileage of their vehicles; one vehicle was 16 years old and had been driven 178,000 miles at the time of filing and the other vehicle was 11 years old and had been driven 113,000 miles at the time of filing. The debtors entered the average monthly payment of the loan on Line 23 by using the total amount of the loan, divided by 60. On Line 24 they did not enter a loan amount for the second vehicle, but rather claimed the entire amount of the IRS ownership expense.

When the Unites States Trustee calculated the means test, it did not factor in the additional $400 transportation operation expense for both vehicles on Line 22. Further, since both vehicles are secured by a loan, according to the United States Trustee, there should be entries on both Lines 23 and 24. In an effort to reflect the payment for two vehicles, the United States Trustee took the amount of the loan on Schedule D, $17,575, and divided it by 60 to reach

2

$263. It then divided $263 by three for each of the three vehicles secured by the loan and entered that amount, $97, on Lines 23 and 24. In essence, it pro-rated the loan equally among the three secured vehicles and allocated this prorated portion to each of the two claimed vehicles on Lines 23 and 24. Nevertheless, the $97 allocated to the other secured car was deducted on line 42, giving the debtors a deduction for the full amount of the secured debt.

ARGUMENT

*Debtors' Argument*

The debtors argue that if the loan will be paid off during the 60 months of the calculations set forth in section 707(b)(2)(A)(iii), they would be entitled to a pro-rated amount of the $200 per month for the remaining 25 months of the 60-month period. The debtors contend that the machinations mandated by the code for above-median income debtors are conducted with the goal of determining what a debtor would pay in a hypothetical chapter 13. In this case, the debtors had 35 more payments to make before retiring the debt on their vehicles. If the debtors were to continue paying on the pre-bankruptcy secured debt through a hypothetical chapter 13 case, the debt would be retired during the final 25 months of the commitment period. Additionally, the Internal Revenue Manual directs the local standards for vehicle operating expenses. The Manual provides:

> [W]here the taxpayer owns a vehicle that is currently over six years old and/or has reported mileage of 75,000 miles or more, an additional operating expense of $200 will generally be allowed for the collection period that remains after the loan/lease has been "retired" plus the operating expense. Note: This also applies to those taxpayers that have no loan/lease on a vehicle over six years old and/or has reported mileage of 75,000 miles or more.

Internal Revenue Manual § 5.8.5.5.2.

Line 22 of the debtors' Form 22A incorporates the standard amount for operating two or more vehicles, $358.00, plus an additional $200.00 per vehicle. Because the vehicles will be unencumbered during the final 25 months of the applicable commitment period in a hypothetical chapter 13, the debtors urge the court to allow them the additional $200.00 per month per vehicle operating expense on Line 22 of the means test, for a total deduction of $758.00 per month.

In the alternative, the debtors ask that the court grant a pro-rata allowance for the portion of the commitment period after the debt on the cars would be retired if paid according to the pre-bankruptcy note. According to the Internal Revenue Manual, "an additional operating expense of $200 will generally be allowed for the collection period that remains after the loan/lease has been 'retired.'" Internal Revenue Manual § 5.8.5.5.2(3). In this case, the alternative would allow the debtors to deduct $524.67 ($358 + [$200 x 25/60] + [$200 x 25/60]) per month on Line 22.

*United States Trustee's Argument*

The United States Trustee counters that the means test calculates the applicable expense at the time of filing, not 36 months into the future. Therefore, the $200 additional transportation allowance is not applicable to the debtors. Instead they receive the ownership allowance for each vehicle because the vehicles are secured by a loan. The debtors cannot receive the benefit of both the additional ownership allowance and the transportation expense. Additionally, the United States Trustee points out that under section 707(b)(2)(A)(iii) debtors calculate the average monthly payment over 60 months. Thus, for purposes of the statute, the loan is not paid off or retired during the 60-month period as the debtors aver; it is hypothetically stretched out over the entire commitment period. Thus, the additional allowance would not come into effect. Finally, under the debtors' theory, once the loan is hypothetically paid off on its contractual timetable,

4

they want the benefit of the pro-rated additional transportation allowance for the remainder of the commitment period. According to the United States Trustee, that would mean the debtors would lose the ownership allowances on Lines 23 and 24 for months 36 on, which are higher than the additional $200 per vehicle. Under this analysis, the debtors' theory is to their detriment. The bottom line is that if the court disallows the additional $400 claimed on the debtors' means test, the presumption of abuse arises, and the debtors have not presented special circumstances to rebut the presumption.

DISCUSSION

This court must decide whether or not chapter 7 debtors whose auto loan will be retired during the hypothetical commitment period should be allowed an amount over and above the standard deduction in Form 22A, Line 22, when the vehicle is over six years old and/or the vehicle has over 75,000 miles. If the debtors are allowed an additional amount, then the question becomes whether it should be the $200 per vehicle allowed by the IRS Manual or a lesser amount.

Section 707(b)(1) provides, in part, that a court:

> ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter....

11 U.S.C. § 707(b)(1). Subsection (b)(2)(A)(i) furthers defines what constitutes "abuse" and allows for a presumption of abuse to be found under certain circumstances. This presumption test is codified in section 707(b)(2)(A) and is most commonly referred to as the "means test."

It is undisputed that these debtors earn more than the state's median income, and how this

5

number was calculated by the debtors is not in dispute. To determine a debtor's expenses under the applicable means test, the law does not always consider a debtor's actual, current income and expenses. Instead, for above median income debtors, it includes only certain income sources and allows the debtor to reduce available income by certain expenses necessary for a basic standard of living. In addition to certain common, standard expenses the debtor is also allowed to count some expenses specific to the debtor based on his or her subjective circumstances. *In re Hice*, 376 B.R. 771, 773-74 (Bankr. D.S.C. 2007).

Section 707(b)(2)(A)(ii)(I) delineates what these expenses may include:

The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides ....

11 U.S.C. § 707(b)(2)(A)(ii)(I). The National Standards and Local Standards are tables setting out various expense amounts that are used by the IRS in collecting delinquent taxes. The National Standards set forth amounts allowed as expenses for food, clothing, housekeeping, personal care, and miscellaneous items, based on family size and gross monthly income. The Local Standards set forth expense amounts for transportation and for housing and utilities. With respect to transportation, the Local Standards provide amounts for operating costs and public transportation costs, based on locality and the number of cars owned (up to two). The Local Standards also provide single amounts (not based on locality) for ownership costs relating to a first and second car. The transportation expenses at issue herein are categorized under the definition of Local Standards.

In order to calculate the average monthly payment on a secured claim, debtors are

6

Case 07-26673-mdm    Doc 37    Filed 05/08/08    Page 6 of 9

required to take the sum total of all amounts scheduled as contractually due to the secured creditor in each month of the 60 months following the date of the petition. 11 U.S.C. § 707(b)(2)(A)(iii). Where there is no secured debt the Internal Revenue Manual allows for an additional transportation expense for older vehicles. Specifically, the Manual states that

> where the taxpayer owns a vehicle that is currently over six years old and/or has reported mileage of 75,000 miles or more, an additional operating expense of $200 will generally be allowed for the collection period that remains after the loan/lease has been "retired" plus the operating expense.

I.R.M. § 5.8.5.5.2.

The court is unable to find any case law addressing this specific issue. The debtors' argument makes some sense in a chapter 13 case. In fact, support for that position may be found in the Internal Revenue Manual, which provides the following example:

> The taxpayer, who lives in the Midwest Region, owns a 1995 Ford Taurus, with 90,000 reported miles. The vehicle was bought used, and the auto loan will be fully paid in 30 months, at $300 per month. In this situation, the taxpayer will be allowed the ownership expense until the loan is fully paid; i.e., $300 plus the allowable operating expense of $231 per month (unless less is claimed), for a total transportation allowance of $531 per month. After the auto loan is "retired" in 30 months, the ownership expense is not applicable; however, at that point, the taxpayer will be allowed a $200 operating expense allowance, in addition to the standard $231, for a total operating expense allowance of $431 per month.

I.R.M. § 5.8.5.5.2. However, Congress did not adopt the IRS collection financial standards nor the Internal Revenue Manual. Instead, it simply imported the "applicable monthly expense amounts specified under the National Standards and Local Standards" and it is only in the IRS categories described as Other Necessary Expenses that BAPCPA's means test focuses at all on a debtor's "actual monthly expenses." *In re Zaporski*, 366 B.R. 758, 768 (Bankr. E.D. Mich. 2007).

7

Furthermore, even in a chapter 13 case, courts have found that debtors are not required to include a "step-up" provision in their original plans to reflect an increase in income that will presumably occur when the debt on a vehicle is paid off. *E.g., In re Barrett*, 371 B.R. 855, 860 (Bankr. S.D. Ill. 2007). Those courts have refused to look beyond Form B22C in determining disposable income to consider any anticipated income the debtor may have during the life of the plan. *Id*. In a chapter 13 case, a change of circumstances would generally mandate modification of the plan, with all the safeguards and scrutiny that process entails. *See In re Wilson*, 383 B.R. 729 (B.A.P. 8th Cir. 2008) (noting if debtor with unencumbered vehicle needed a new car during chapter 13 case, debtor could move to modify plan based on changed circumstances). Another court noted that consideration of postpetition events in the context of a motion to dismiss under section 707(b) must occur under section 707(b)(2)(B) or (b)(3), not (b)(2)(A):

> The U.S. Trustee, or any other party in interest, may not rely on events which have not yet occurred, or which it believes may occur, as of the date of the filing of the [motion to dismiss under section 707(b)]. To allow a [party] to include the outcome of future events as part of the means test would eliminate the distinction between the presumption of abuse test and the totality of the circumstances test. ... If the debtors want to present facts that do not appear in the means test, they must argue these facts as special circumstances under § 707(b)(2)(B).

*In re Singletary*, 354 B.R. 455, 465 (Bankr. S.D. Tex. 2006).

In this chapter 7 case, the debtors' calculations assume something in the future that may or may not come to pass: namely, that in month 36 they will have three unencumbered vehicles. What if instead of three unencumbered vehicles in month 36, the debtors have just one encumbered vehicle and no unencumbered vehicles, or two encumbered vehicles and one unencumbered vehicle in month 42? With such old, high mileage cars, replacement is a real possibility. Other scenarios are not beyond contemplation. These debtors do not face special

8

circumstances which would warrant deviation from their expenses as of the date of the chapter 7 petition, and the court need not speculate as to some time in the future.

This construction is consistent with this court's previous declaration that in a chapter 7 case, "the means test calculations are intended to represent a 'snapshot' as of the petition date, examined without regard to the debtor's future intentions." *In re Kalata*, 2008 WL 552856 (Bankr. E.D. Wis. Feb. 27, 2008). After disallowance of the additional pro-rated $400 on Line 22 of Form 22A, the debtors' monthly net income is greater than the statutory benchmarks of the means test, and the presumption of abuse arises.

For the reasons discussed above, the United States Trustee's motion to dismiss is granted. The debtors shall have 30 days from the date of this decision and order to convert to chapter 13. A separate order consisted with this decision will be entered.

May 8, 2008

                                            Margaret Dee McGarity
                                            Chief Judge, U.S. Bankruptcy Court